**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                              :
EXPEDIA, INC.,                                :
                                              :
                           Plaintiff,         :
                                              :      Case No. 19-cv-01066 (PKC)
           - against -                        :
                                              :
UNITED AIRLINES, INC.,                        :      __AMENDED COMPLAINT__
                                              :
                           Defendant.         :
                                              :
------------------------------------------------------------------x
```

Plaintiff Expedia, Inc. ("Expedia"), by its undersigned counsel, for its Complaint

against Defendant United Airlines, Inc. ("United"), upon knowledge as to its own conduct and

upon information and belief as to all other matters, hereby alleges:

## NATURE OF THE ACTION

1.      Expedia and United are parties to a Ticketing Agreement (the

"Agreement") that runs through September 30, 2019. That Agreement requires United to provide

Expedia with, among many other things, access to pricing and availability for all of United's

publicly available flights regardless of when those flights are to occur, and that United permit

Expedia's customers to reserve seats on those flights.[1] As of this filing, United has provided

pricing and availability for flights through January 6, 2020, and Expedia's customers, who

frequently reserve flights far in advance of departure, have already reserved more than 2,000

seats on United flights that are not scheduled to occur until after September 30, 2019.

---

[1] As used herein, the terms "book and "reserve" are used interchangeably, and each refer
to the customer's act of booking a flight or lodging from a third-party provider through Expedia.
The date on which the customer books a flight from the airline carrier is (almost always)
different from the date on which the flight actually departs or occurs.

2.       Now, however, in a flagrant breach of its obligations under the Agreement—and in a brazen attempt to force Expedia to renegotiate the Agreement's economic terms, with which United is unsatisfied—United has threatened that beginning on Monday, February 11, 2019, it will terminate Expedia's access to fares for, and prohibit Expedia's customers from reserving, any United flights that are scheduled to occur after September 30, 2019 (the "Post-September 2019 Flights").

3.       Expedia requires this Court's intervention to enjoin United from unlawfully discontinuing Expedia's access to critical pricing and availability information that is necessary to Expedia's ability to facilitate its customers booking Post-September 2019 Flights. Those customers include, among many others, 64 million Expedia loyalty customers and several organizations, like the nation's largest non-profit organization serving the interests of older Americans, that have contracted with Expedia to use Expedia's platform for their members' benefits.

4.       By unlawfully cutting off Expedia's access to pricing and availability information, United will also undermine Expedia's ability to provide customer service to the many customers who have already booked Post-September 2019 Flights and also to those customers who will seek to change a *pre*-September 2019 flight reservation to a *post*-September 2019 flight. United will do this by blocking Expedia's visibility into United's current availability and pricing for Publicly Available Fares for all Post-September 2019 Flights, which will, in turn, render Expedia unable to advise customers regarding Post-September 2019 Flights or to facilitate customers' changes to their itineraries if the changes involve Post-September 2019 Flights. By restricting Expedia's access to this information, United threatens to impose on those customers unexpected delays, logistical burdens, and potential increased costs.

3415237.1

5.      United has not hidden its motivations for its planned breach of the Agreement: It does not like the Agreement's current economic terms, which are in place through September 30, 2019, and it wants Expedia to renegotiate those terms immediately. Rather than engage in a good faith negotiation, United has opted to try to leverage its power in the air travel market as one of the four largest airlines in the United States to pressure Expedia by, as one United executive put it, ***"suppressing Expedia's ability to make sales"*** so that Expedia will "***sell as few tickets as possible***."

6.      United ignores that its breach of the Agreement will severely and irreparably harm Expedia and, as importantly, Expedia's customers. Expedia will not only lose the ability to facilitate reservations for United flights, the sudden loss of Expedia's ability to present fare and availability information to its customers will undermine a core aspect of Expedia's brand and reputation, namely, its ability to provide customers with a full-service offering consisting of a comprehensive suite of travel products that can meet every one of the customers' needs. This ability is critical to why Expedia's customers choose to use Expedia over its competitors. And, Expedia knows, including from its own experience, that the loss of its ability to make a full-service offering, and an inability to give existing and potential new customers access to major airlines like United, creates a "halo effect" in which those customers and potential customers become reluctant to use Expedia's services in the future and turn instead to offerings by Expedia's competitors, and that the "halo effect" can last for *years*.

7.      While United may ultimately choose not to enter into a new commercial agreement with Expedia when the term of the current Agreement ends, it has no right to breach the existing Agreement and to unilaterally inflict harm on Expedia and its customers as a negotiating tactic. Thus, Expedia brings this action to prevent United from breaching the

Agreement, to compel United to continue to fulfill its obligations in its relationship with Expedia, and to avoid the harm to customers that United threatens to inflict.

## PARTIES

8.     Plaintiff Expedia is a Washington corporation principally located in Bellevue, Washington.

9.     Expedia is a leading online travel provider, helping travelers plan and book travel. Expedia-branded websites make a large variety of travel services available directly to travelers through its U.S.-based website, www.expedia.com, as well as through localized versions of the Expedia website in various countries throughout the world. Core to Expedia's brand is its ability to provide a large number of suppliers from which travelers can choose to search for, compare information about (including pricing, availability and traveler reviews), and book travel services—on both a stand-alone and package basis—including airline tickets and airline transfers, hotel lodging, car rentals, and many destination services, such as local attractions and tours. Expedia is among the most successful online travel businesses in the United States and has spent substantial resources building its reputation as a leader in high-quality travel and related services that is a "one-stop shopping" experience where customers can plan and book all of their travel needs.

10.     Defendant United Airlines is a Delaware corporation principally located in Chicago, Illinois, and it is wholly owned by United Continental Holdings, Inc.

11.     In 2010, United merged with Continental Airlines, and United now controls more than 15% of the market share of domestic air travel in the United States. United transports more than 158 million passengers per year via nearly 750,000 flights, which is as

4

many as JetBlue Airways, Alaska Airlines, Spirit Airlines, and Frontier Airlines *combined*.[2]

Further, United controls far more than 15% of all flights in several critical U.S. markets,

including Newark (where it controls more than 50% of all flights), San Francisco (more than

41%), Houston (more than 37%), and Denver (more than 30%).

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this case under 28 U.S.C. § 1332 because

the parties are citizens of different States and the amount in controversy in this action exceeds

$75,000.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and this Court

may properly exercise personal jurisdiction over United because, *inter alia*, United has expressly

consented in the Agreement to this action being brought exclusively in state and federal courts

sitting in New York, New York.

## BACKGROUND FACTS

**Expedia's Business**

14.     As the premier online travel provider, Expedia gives its customers the

power to complete virtually every aspect of researching, planning, and booking their travel,

including airline tickets on major and minor carriers;[3] accessing personal travel reviews of

hotels; and making reservations for a wide array of hotels, car rentals, cruises, and many other

in-destination services. Expedia provides unique value to customers by presenting them, in a

---

[2] Delta Air Lines, American Airlines, and Southwest Airlines control slightly larger segments of the air travel market and, together with United, these airlines control approximately 80% of the air travel market.

[3] Neither Expedia nor its competitors offer customers the ability to book Southwest Airline flights because Southwest has chosen a model in which customers can, in general, only book directly from Southwest. Expedia's customers, therefore, have no expectation that Southwest flights will be available through Expedia.

3415237.1

single place, www.expedia.com, a network of travel service providers, lodging options, and activities. Expedia's network maximizes the selection of airline carriers (and other modes of travel) available to the customer while allowing the customer to compare price points across those carriers and to select the flight that best meets their needs.

15.     When a customer arrives at Expedia's website, he or she begins their research by searching for flights, hotels, rental cars, cruises, or destination services, as well as package deals that combine some or all of the foregoing. When a customer books one aspect of their travel, such as a flight, Expedia then offers additional recommendations for hotels, vacation rentals, car rentals, destination activities, and insurance policies tailored to the customer's needs and the time and place of their trip. Expedia's customer experience is further enhanced by the discounted rates customers may obtain for booking more than one part of their travel (*e.g.*, a flight plus hotel package) through Expedia.

16.     In addition to sheer convenience—including the customer's ability to trust that Expedia has presented the widest array of travel options possible—the customer knows that, should something go wrong with any aspect of their travel planned and reserved through Expedia, they only need to reach out to Expedia to solve their issue. In other words, Expedia's relationship with a customer does not end when the travel is reserved, Expedia continues to assist the customer leading up to and during their travel, including to assist with the consequences of cancelled flights, customers' need to change their flight itinerary, facilitating the rebooking of accommodations, and customer complaints, among the many other problems that can attend travel.

17.     Notably, more than 64 million people have signed up to become Expedia "loyalty customers" who, by virtue of that status, are given access to yet additional travel

6

discounts and earn "Expedia+ points" with each booking they make through Expedia. Those customers can then use the "Expedia+ points" they accumulate in exchange for reservations for flights or hotel rooms that are offered by third-party travel suppliers through Expedia.

18.     Expedia also provides a customized online environment for certain third-party partners to facilitate booking of travel accommodations, which allows the third-party to leverage Expedia's tools and travel offerings through a modified version of Expedia's website for the benefit of the third-party's members, employees, or customers (sometimes referred to as a "white-label arrangement"). Those third-party partners—which include, for example, several bank and hotel loyalty programs, the nation's largest non-profit organization serving the interests of older Americans, and multiple large corporations—rely on Expedia's data, including the wide array of price and availability information on flights that may be booked through Expedia, to serve their own members, employees, and customers.

19.     It is well-known that a critical aspect of the value that Expedia provides to its customers, and a fundamental pillar of the brand Expedia has built over the past 22 years, is Expedia's ability to provide a wider selection of offerings by airline carriers than any online travel provider. Expedia's customers can trust that when they search for flights through Expedia, they are seeing an accurate view of the options available to them—including from major airline carriers—such that they can confidently book every block of their trip on Expedia's site.

20.     Indeed, in a 2018 study comparing Expedia against four other providers of online travel bookings, customers said overwhelmingly that the dominant reason they prefer Expedia's brand to those other providers is the full-service nature of Expedia's offering, a unique Expedia feature. This included survey participants ranking Expedia far above other providers with respect to which provider:

3415237.1

- Has the "*widest range of travel options across travel and accommodation*";

- Has the greatest "*flexibility of dates, times and airport locations on flights*"; and

- "*Allows me to create my own customized trip.*"

21.     Similarly, in another 2018 study, in response to being asked to differentiate between 12 online travel brands, customers distinguished Expedia's brand, scoring it orders of magnitude above any other online travel provider, with respect to whether the travel provider "*[h]as everything you need all in one place.*"

**United's Obligations Under the Agreement**

22.     To maintain its brand and to ensure that Expedia continues to offer its customers and potential customers a full-service, one-stop travel and accommodations shopping experience (and to ensure that Expedia's third-party partners, and their members, also have access to that experience), Expedia regularly enters into multi-year contracts with airline carriers pursuant to which the airline provides Expedia with access to a continuous feed of up-to-date fares and availability information for all flights the airline has made available for booking, and the airline permits Expedia's customers to book any of those flights through Expedia. In general, for each flight an Expedia customer books through Expedia, Expedia earns a small commission from the airline.

23.     These contracts frequently have two to three-year terms, and as the end of a contract term nears, Expedia and the airline renew and extend the contract and/or renegotiate its terms. The Agreement at issue here—which United threatens to breach beginning on February 11, 2019—is one of these contracts.

24.     Expedia and United entered into the Agreement, as of September 1, 2011, and it sets forth the terms under which United agreed to provide Expedia with access to fares for all of United's publicly-available flights in order for Expedia to offer its customers and third-

party partners the opportunity to book those flights through Expedia. United further agreed to pay a small commission to Expedia for each United flight Expedia's customers book.

25. A significant portion of the value that Expedia obtained under the Agreement is the right, throughout the term of the Agreement, to obtain fare and availability information for United flights regardless of whether those flights are scheduled to occur during or after the term of the Agreement. This aspect of the Agreement is particularly important to Expedia for at least two reasons: *one*, as noted, some customers frequently book travel far in advance of when the travel is to occur, and it was critical for Expedia to be able to facilitate its customers' desire to complete the booking process during the term of the Agreement even if the date of the travel was after the term of the Agreement. *Two*, as the end of the term of the Agreement gets closer, a growing percentage of all travel that customers seek to book will be after the term of the Agreement. This fact also underscored the importance to Expedia of the ability to facilitate during the term of the Agreement its customers' need to book travel after the term of the Agreement.

26. The Agreement is unequivocal that United shall provide Expedia with access to fares for *every* flight that United offers publicly without regard for when that flight is to occur. In particular, Section 19.1 of the Agreement says,

> Publicly Available Fares.  [United] shall provide Expedia with access to ***all Publicly Available Fares*** at pricing and availability levels no less favorable than the pricing and availability levels available on or provided to (a) any other third party online and/or offline travel services company ("Third Party Travel Companies") (b) any GDS, (c) Carrier Internal Distribution Channels and (d) with respect to air-only Publicly Available Fares Carrier's Continental Airlines Vacations and/or United Vacations programs.

(Agreement § 19.1 (emphasis added).) "Publicly Available Fares," in turn, are defined in the Agreement as,

3415237.1

> ***all Fares made available for purchase by the public at large***, whether (a) published by [United] through [the Airline Tariff Publishing Company] with unrestricted viewership for sale to the public at large through any [Airlines Reporting Corporation] or [International Air Transport Association] (as applicable) Carrier-accredited travel agencies and made available in any [Global Distribution System] or a Carrier Internal Distribution Channel, or (b) otherwise made available for purchase by the public at large, including web Fares[.][4]

(Agreement § 1.2.26 (emphasis added).) "Fares," as used in the term "Publicly Available Fares," and throughout the Agreement, means "prices charged by [United] for air travel and available for purchase from [United] in any [Global Distribution System][5] provider or a Carrier Internal Distribution Channel."[6] (*Id.* § 1.2.13.)

  27. In other words, said simply, the price that United charges for *any* flight made available to the public and the availability of those flights—whether through United's own website, any other website, or the "GDS" networks used by travel agencies throughout the world

---

[4] The Agreement also addresses a separate category of fares for United flights that are not made available for purchase by the public at large—*e.g.*, private fares, promotional fares, targeted fares, and wholesale fares—which are not "Publicly Available Fares" and are not at issue in this lawsuit.

[5] Global Distribution Systems are computerized networks used by travel agencies to search for and book flights offered by multiple airlines. *See Back Bay Resorts SWF, LLC v. Holiday Hospitality Franchising, LLC*, 2015 WL 13651668, at *2 n.2 (N.D. Ga. Mar. 2, 2015) ("A Global Distribution System offers a single point of access for consumers to reserve things like airline seats, hotel rooms, and rental cars from a vast network of suppliers."); *In re: Global Distribution Systems (GDS) Antitrust Litig.*, 816 F. Supp. 2d 1378, 1378 n.1 (J.P.M.L. 2011) ("A GDS is a computerized system used to distribute airline fare, flight, and availability information to travel agencies (including online travel agencies), and to enable those agencies to make reservations and issue tickets.").

[6] A "Carrier Internal Distribution Channel" means "to the extent available to potential customers to make Ticket purchases, (i) [United's] reservations or sales personnel, (ii) the internal reservations system used by [United] and (iii) *any [United] Web Site*." (Agreement § 1.2.7 (emphasis added).)

3415237.1

to book flights—constitutes a "Publicly Available Fare," and, pursuant to the Agreement, United must provide Expedia with pricing and availability of "*all Publicly Available Fares.*"

28.     United's obligation to provide Expedia with the pricing and availability of all Publicly Available Fares is clear, and nothing in the Agreement suggests that United's obligation to provide Expedia with such information is somehow limited to only those flights that are scheduled to occur within the term of the Ticketing Agreement.[7]

29.     In addition to Expedia's unequivocal right to receive *all* Publicly Available Fares for United flights, United also provided Expedia with several contractual covenants that make clear the importance to Expedia of the availability and fairness of all Publicly Available Fares. These provisions are plainly intended to protect Expedia from precisely the sort of unfair and improper manipulation of fares that United has now threatened. This includes, by way of example only, and among many others:

(a)     Section 19.3 of the Agreement, which says, in pertinent part, "the Parties acknowledge that the requirements of this Section 19 [*i.e.*, United's obligation to provide Expedia with access to all Publicly Available Fares] *constitute material terms* of this Agreement which have significant economic or operational impact on Expedia," (emphasis added);

(b)     Section 7.1 of the Agreement, which says, in pertinent part, that "United . . . represents, warrants and covenants that [it] will not manipulate [its] rules or policies relating to the booking or sale of Tickets (including without limitation any rules

---

[7] The Agreement includes provisions governing the parties' actions in the event of a breach of contract, including that the Agreement may be terminated if (i) a "material breach" is not cured within 10 days of written notice, or (ii) a "non-material or technical breach" is not cured within 30 days of written notice.  Expedia has not breached the Agreement, and United has never provided written notice of any type of breach.

11

or policies relating to costs, charges or fees in connection with the booking or sale of

Tickets), or debit memo practices in a manner that is intended to negatively impact

Expedia . . . or in any manner that impacts the relative economic benefits of Expedia and

its Affiliates . . . ."; and

(c)      Section 20.1 of the Agreement, which says, in pertinent part, that

*United "will not discriminate against or disfavor Expedia*, its Affiliates or any Expedia

Customer as compared to any Third Party Travel Company, any GDS, any Carrier

Internal Distribution Channel or the customers of any of the foregoing" in, among other

things, the provision of access to "any functionality or feature, whether currently existing,

new, upgraded, or updated, that makes the booking or ticketing process more efficient or

technically feasible," (emphasis added).

30.      The refusal to provide Expedia with access to Publicly Available Fares

that United threatens in its February 1 Letter and United's discrimination against Expedia

relative to all other travel providers and the offerings on United's own website, which United has

done in an attempt to cause Expedia to capitulate to economic terms that are more favorable to

United, violate every one of these (and many other) terms in the Agreement.

**United and Expedia Reaffirm United's Obligations**
**Under the Agreement and Extend the Agreement's Term**

31.      The course of the relationship between United and Expedia also

demonstrates two important facts—*one*, the parties always understood that the Agreement

entitled Expedia to fare and availability information for United flights *even if those flights were*

*scheduled for after the Agreement's term*; and, *two*, Expedia has always ensured that its

customers receive customer service even if they book flights that occur only after the end date

for the Agreement has passed.

3415237.1

32.     When it was initially agreed to by United and Expedia, the Agreement had a three-year term, from September 1, 2011 through August 31, 2014.

33.     During those three years, United never claimed that Expedia was entitled to access only Publicly Available Fares for flights scheduled to occur during the term of the Agreement (*i.e.*, flights occurring between September 1, 2011 through August 31, 2014), and United never attempted to prevent Expedia from accessing flights scheduled to occur after August 31, 2014, or to prohibit Expedia's customers from reserving such flights.

34.     During the first three-year term of the Agreement, United and Expedia expressed their mutual desire to continue their contractual relationship. On December 24, 2013, Expedia and United agreed in writing to the "Amendment to Ticketing Agreement," (the "First Amendment"), which extended the Agreement's term through August 31, 2016 and reaffirmed United's material obligations under the Agreement, including United's obligation to provide Expedia with access to all Publicly Available Fares.

35.     Just as it had done during the Agreement's original term, during the term as extended by the First Amendment—*i.e.*, between December 24, 2013 and August 31, 2016— United continued to provide Expedia with continuous access to Publicly Available Fares regardless of the flight's departure date. During the second three-year term of the Agreement, United never claimed that Expedia was entitled to access fares for only those flights scheduled to occur during the term of the Agreement (*i.e.*, flights occurring between December 24, 2013 and August 31, 2016), never attempted to prevent Expedia from accessing Publicly Available Fares for flights scheduled to occur after the term of the Agreement, or to prohibit Expedia's customers from reserving such flights.

36. Leading up to August 31, 2016—as they had done under the original agreement—United and Expedia again expressed their mutual desire to continue their contractual relationship beyond the current term of the Agreement. And, again, the Agreement's agreed-to end date passed, but even after August 31, 2016, United continued to provide Expedia with access to all Publicly Available Fares, and Expedia continued to facilitate its customers' bookings for United flights and to provide customer service to customers who booked those flights. On October 12, 2016— *more than five weeks after the extended end date for the Agreement had passed*—Expedia and United executed the "Second Amendment to Ticketing Agreement," (the "Second Amendment"), that further extended the Agreement term through September 30, 2019, and again reaffirmed all of United's material obligations under the Agreement, including the obligation to provide Expedia with access to all Publicly Available Fares.

37. Under the Second Amendment, as under the original Agreement and again under the First Amendment, Expedia continues to have access to Publicly Available Fares for United flights scheduled to occur only after the current term of the Agreement is to end, *i.e.*, on September 31, 2019, and Expedia's customers can (and do) book those flights during the Agreement's current term. As of the date of this Complaint, United offers customers—including through Expedia—the ability to book flights for any time through January 6, 2020. And, Expedia's customers continue to book those flights even though the flights will occur after the end of the Agreement's term—indeed, as of the filing of this Complaint, customers have already booked more than 2,000 Post-September 2019 Flights through Expedia.

38. Over the course of United and Expedia's more than seven-year relationship under the Agreement—during which time one of the agreed-to end dates approached

14

and passed—United provided Expedia with tens of thousands of Publicly Available Fares for flights dated after the Agreement's then-current end date. And, Expedia's customers have booked, at minimum, thousands of such flights. This is hardly surprising because it is exactly what the Agreement requires.

39.     Notably, Expedia is not aware of a single instance, over those more than seven years, when any Expedia customer who booked a United flight during the term of the Agreement failed to receive customer service from Expedia simply because the flight was to occur after the then-current end date of the Agreement.

**United Becomes Dissatisfied With the Agreement**

40.     In early 2017, United began to express dissatisfaction with the economic terms of the Agreement, despite that it had only months earlier, in October 2016, reaffirmed and extended those terms by agreeing to the Second Amendment.

41.     Specifically, United complained that the terms of the Agreement were less advantageous to United than terms of similar agreements that Expedia had with other carriers. When Expedia disagreed, United threatened that if Expedia did not commit to renegotiating the Agreement before 2019 (despite that, at the time, more than two years of the Agreement's three-year term remained) and agree to economic terms more like those Expedia had with other carriers, then United would cut off Expedia's access to Publicly Available Fares for United flights.

42.     The issue remained largely dormant until August 2018 when, despite that more than a year of the Agreement's term still remained, United again demanded to renegotiate the Agreement's economic terms and again raised the specter of United interfering with Expedia's ability to access Publicly Available Fares, and Expedia's customers' ability to book United flights through Expedia, if Expedia refused.

3415237.1

43.     Expedia, which was and is under no obligation to renegotiate the terms of the Agreement, informed United that it will be ready and willing to discuss the terms of the next iteration of the Agreement, in good faith, at the appropriate time and consistent with the parties' years of practice, *i.e.*, sometime nearer to the end of the current Agreement, which is scheduled to run through September 30, 2019. That said, Expedia informed United that, until such time as a comprehensive negotiation is appropriate, Expedia is willing to maintain an open and ongoing dialogue regarding what the next iteration of the Agreement might include.

44.     That response was not good enough for United, and so it attempted to ratchet up the pressure on Expedia. Ignoring the terms of the Agreement and United's contractual obligation to provide Expedia with access to *all* Publicly Available Fares for United flights regardless of date, on October 18, 2018, United sent to Expedia an e-mail titled "legal notice" which said that United would only "allow the ticketing" of United flights by Expedia's customers "through the end of the year" (*i.e.*, 2018, nine months before the end of the Agreement's term), following which United "***intended to suppress any sales from Expedia after Dec 31, 2018 for travel after Oct 1, 2019 and beyond***" ("<u>First Legal Notice</u>"). United added that this result—and the concomitant harm to Expedia could be avoided—if Expedia would simply agree to new economic terms, saying: "once a new agreement is reached, we would promptly restore the ticketing authority for the flights after Oct 1, 2019."

45.     Expedia responded that the terms of the Agreement to which the parties contracted seven years ago—and which the parties have twice reaffirmed following additional negotiations in 2013 and 2016—plainly state that Expedia is entitled to all Publicly Available Fares for all United flights irrespective of when those flights are to occur. This response prompted a second "legal notice" from United to Expedia restating its threat that United "will not

continue to permit ticketing of United flights by Expedia or its customers after Jan 1, 2019 *in the absence of an agreement that covers the period after Oct 1, 2019*."

46.     Next, during a meeting on December 11, 2018, between United and Expedia to discuss United's threats and demands, United told Expedia that because it was unhappy with the terms of the Agreement, its intention was to cause Expedia to "*sell as few tickets as possible*" until the contract was renegotiated.

47.     United also claimed that its rush to renegotiate the Agreement was not based solely on United's dissatisfaction with the economic terms, but was also purportedly due to United's concern that *if* United and Expedia did not reach an agreement to extend or amend the Agreement before September 30, 2019; and *if* that meant that, after September 30, 2019, Expedia no longer had access to United's Publicly Available Fares for Post-September 2019 Flights; *then* Expedia would simply abandon the needs of all customers who had booked Post-September 2019 Flights before the Agreement expired and that *if* Expedia refused those customers service or assistance, United would be harmed.

48.     Expedia explained to United that this speculative theory of harm was incoherent. Indeed, Expedia's strong self-interest in ensuring that its own customers have a satisfying travel experience—irrespective of the airline on which they booked a flight—trumps any remote possibility that Expedia would harm its own customers in some attempt to spite United.

49.     Further, United's baseless concerns aside, the Agreement provides Expedia with an unequivocal right to all Publicly Available Fares regardless of date and United cannot rewrite the Agreement to limit Expedia's access to something less than all Publicly Available Fares.

17

50.     Even though United's position had no merit under the Agreement, in mid-December 2018, Expedia proposed a solution that would pacify United's supposed concern about Expedia providing sufficient customer service: Expedia would agree to an amendment to the Agreement that would dispel any theoretical concern that Expedia would refuse to provide full customer service to every customer who booked a Post-September 2019 Flight through and including each such customer's date of travel, even if Expedia and United were unable to agree to an extension, amendment, or replacement of the Agreement that would give Expedia continued access to Publicly Available Fares after September 30, 2019.

51.     This proposed amendment was in no way required or necessary. But, it was costless to United and would have ensured that if United was genuinely concerned that Expedia customers who booked Post-September 2019 Flights might not receive customer service from Expedia after September 30, 2019, then that concern, no matter how speculative, would be resolved. United summarily rejected Expedia's solution.

52.     The reason for United's rejection of Expedia's proposal is not hard to discern: United is *not* concerned about customers, it is concerned about money. Thus, a solution that ensures the protection of Expedia and United's joint customers but does not also increase United's revenue is, for United, no solution at all. Further, if United's purported concern was resolved, as it would have been by Expedia's proposal, then United would have no pretext on which to base its unlawful failure to perform under the Agreement.

**United's February 1, 2019 Letter**

53.     On Friday, February 1, 2019, just before the close of business eastern time, United sent a letter, via e-mail, to Expedia that restates United's threat to disrupt Expedia's business by unilaterally terminating Expedia's right to access Publicly Available Fares for Post-September 2019 Flights (the "February 1 Letter").

18

54.     The February 1 Letter acknowledges that the Agreement does not expire until September 30, 2019. Nonetheless, United says in the February 1 Letter that because Expedia may not provide customers who book Post-September 2019 Flights with adequate "care and redress," United will cut off Expedia's and Expedia's customers' ability to book Post-September 2019 Flights beginning on February 11, 2019. United states that its arbitrary selection of February 11 as the date that it will begin restricting Expedia's access to information is to give Expedia "ample time to disable the display of affected United flights to avoid any customer confusion over the inability to book them."

55.     That United's pretextual concern about customer service is a thin veil for its economic motives is evident in the February 1 Letter itself. In that letter, United's substantial threats to upend a significant aspect of Expedia's business are bookended by United repeating— at the letter's start and at its end—that Expedia might simply avoid all of the negative consequences that United is about to inflict if Expedia simply agrees to renegotiate the Agreement saying, "United remains open to the possibility that we could reach agreement that allows our longstanding relationship to continue," and adding later, "United remains willing to discuss a mutual beneficial agreement to continue our relationship."

56.     While Expedia is willing to engage in such discussions, it should not be forced to do so under the shadow of a manufactured and wholly illegitimate threat to its customers.

3415237.1

**United's Conduct Has Or Will Shortly Breach the Agreement**

57.     There can be no serious dispute that the conduct United threatens in its February 1 Letter—*i.e.*, to cut off Expedia's access to Publicly Available Fares starting on Monday, February 11, 2019—will breach the Agreement. As explained in detail above, United has contracted to provide Expedia with *all* fares for *all* United flights that are made available for sale to the public via United's own site, any third-party travel provider site, or the GDS networks used by travel agents. United has no right to limit which Publicly Available Fares it will allow Expedia to access based on when the flight is to occur, and United is not entitled to write that term into the contract now. This is particularly true given the years' of custom and practice by the parties, during which Expedia's customers booked thousands of United flights that were scheduled to occur after the then-current Agreement end date.

58.     Moreover, the Agreement expressly prohibits United from discriminating against Expedia by giving Expedia access only to information and technical features necessary to the booking of tickets that is inferior to the information and features United uses on its own website and that United provides to Expedia's competitors. The conduct United threatens in the February 1 Letter is clearly discriminatory and in violation of the Agreement. For this reason, too, United is in breach—or will shortly be in breach—of the Agreement.

**United's Conduct Threatens Serious and Irreparable Harm to Expedia's Customers**

59.     While United's February 1 Letter pays lip-service to some concern for customers, the real potential for harm to customers is purely United's doing.

60.     *First*, Expedia's customers have already booked more than 2,000 seats on Post-September 2019 Flights. If, as it has threatened to do, United immediately terminates Expedia's ability to access pricing and availability for Publicly Available Fares for Post-September 2019 Flights and to facilitate its customers bookings on United, then United will have

3415237.1

limited—if not eliminated—Expedia's ability to assist any of those Expedia customers with changing any part of their reservation, and even the ability to respond to the customer's request for the pricing and availability of fares for other Post-September 2019 Flights.

61.     For example, if a current Expedia customer has already booked through Expedia a United flight from New York to Los Angeles to depart on November 23, 2019, and that customer contacts Expedia next Tuesday, February 12, 2019, to change the time or date of the customers' flight—or even their seat assignment—Expedia will have no visibility into pricing and availability for the Publicly Available Fares necessary to assist the customer. And, rather than offering the customer the ability to use Expedia as their one-stop travel shopping destination—a feature core to Expedia's brand and reputation—Expedia will be compelled to abandon its standard customer service processes, for example, to rebook the customer on a different airline as to which it does have visibility (with the concomitant risk of penalties or other charges imposed by United and borne by Expedia and its customers). But for United's intended breach of the Agreement, Expedia could assist the customer—and the hundreds like him or her—through its standard operating procedures.

62.     *Second*, United is creating a similar problem, but on a much larger scale, for the tens of thousands of Expedia customers who have already booked flights on United and other airlines that are schedule to occur before September 30, 2019 (and those customers who will continue to book United flights through Expedia through the term of the Agreement), and who, over the next seven months, contact Expedia to change their flight reservation to a Post-September 2019 Flight on United. Again—contrary to the rights for which Expedia contracted—Expedia will have no visibility into United's booking system, which will cause confusion, delay,

and increased costs to those customers. This irreparable harm could also be avoided by United not breaching the Agreement.

63.     *Third*, as explained above, numerous third-parties partner with Expedia in order to use Expedia's technology and data to offer their members, employees, and customers with access to travel benefits, including flights. Thus, those third-parties—which include several bank loyalty programs, several hotel loyalty programs, the nation's largest non-profit organization serving the interests of older Americans, and multiple large corporations—and their members are able to book what Expedia is able to offer. Expedia attempts to maximize the value offered to those third-parties and their members by, among other things, entering into contracts with airline carriers like United to ensure that those persons are able to use the benefits of the membership in those loyalty programs and organizations, and at those employers, on a wide array of travel offerings that Expedia makes available. By unlawfully breaching the Agreement, United deprives those persons and entities of the benefits that Expedia sought to provide them.

64.     *Fourth*, and similar to the above, more than 60 million persons are members of Expedia's loyalty program, and have accrued Expedia+ points by booking travel, lodging, and activities through Expedia. Like the benefits purchased or earned by the members of the organizations and loyalty programs discussed above, Expedia+ points can be redeemed through Expedia to purchase, among other things, air travel from carriers. United's breach of the Agreement devalues Expedia's loyalty program, and harms its members, by limiting the universe of offerings available to them.

**United's Conduct Also Threatens Serious and Irreparable Harm to Expedia**

65.     United's breach of the Agreement will also impose a significant and irreparable injury on Expedia.

22

66.    There is no dispute that, if United terminates Expedia's right to facilitate its customers booking Post-September 2019 Flights, then Expedia will suffer injury equal to the commission revenue that Expedia would have earned but for United's breach. While that revenue is non-trivial, and is important to Expedia, its importance is greatly exceeded by other, far less quantifiable harm that United threatens to cause.

67.    Initially, United's conduct will have an immediate, negative impact on core aspects of Expedia's brand. Expedia's employees have dedicated more than 20 years, and its investors hundreds of millions of dollars, to building a leading full-service online travel brand. As explained above, a fundamental aspect of Expedia's success, core to its reputation, is its ability to offer a comprehensive suite of travel services. The breadth of offerings that can be booked through Expedia differentiates Expedia from its competitors. And an integral part of that full-service offering is Expedia's ability to provide fares for *all* major carriers—including United. This is particularly true given United's significant share of the air travel market and its monopoly-like control of critical travel hubs.

68.    By terminating Expedia's ability facilitate its customers booking of Post-September 2019 Flights, United will erode a customer trust and set of expectations, which Expedia has developed over years, that when a customer searches for air travel through Expedia, the results which appear reflect a true and complete picture of the full suite of flights available to the customer across all major and minor airlines that Expedia has traditionally offered, including United. If Expedia is unable to provide customers with those comprehensive results, then the likelihood that the customer will leave Expedia for a competitor increases substantially. And, Expedia's experience has shown that when an Expedia customer is forced to choose a competitor over Expedia because Expedia is unable to offer customers the ability to book flight reservations

23

on a particular major carrier, even after Expedia gains (or regains) the ability to offer customers the capability to book on that carrier, a "halo effect" remains in which the customer's perception of Expedia has fundamentally changed. And Expedia can be forced to spend as long as *two years*, and substantial customer reacquisition costs, to recapture that same customer from the competitor.

69.     Thus, if United restricts Expedia's access to Post-September 2019 Flights, the harm United threatens to cause to Expedia will continue to exist even if United later agrees to give Expedia access to those fares.

70.     In addition to impairing public perception of Expedia's brand and Expedia's goodwill, United's breach would have a ripple effect through all of Expedia's offerings that is vast, undeniable, and nearly impossible to quantify.

71.     Expedia's ability to offer a full-service, one-stop travel shopping experience is a key driver to Expedia's success because a typical Expedia customer looks to Expedia to build each aspect of their travel, block by block, which, in turn, gives Expedia the opportunity to facilitate that customer's booking of multiple travel offerings (as opposed to the customer booking only a single aspect of their travel). Customers may enter Expedia's site at various landing pages or search functions, and with disparate intentions or goals, and those customers' initial interactions, searches, and purchases within the site give Expedia the opportunity to capture that customer's other travel needs, which has an exponential benefit to Expedia. For example, if a customer begins their experience on the Expedia site by searching for and booking a flight, the customer's search and booking allows Expedia to present the customer with options and availabilities for hotels, vacation rentals, rental cars, trains, cruises, and insurance. In other words, the value of one travel booking is not limited to the value of that

24

purchase in isolation; rather, it extends to all other potential additional bookings that might stem from the initial one.

72.     Notably, the most common and valuable entry point into Expedia's ecosystem is a customer's search for a flight. Indeed, as many Expedia shopping experiences begin with a flight search as all other Expedia offerings combined. And, if an Expedia customer begins their Expedia experience by searching for and booking a flight, then that customer is more likely than any other customer with some other starting point on the site, to book additional items like lodging or car rentals, which creates exponential value for Expedia. Expedia's ability to offer a robust selection of airline carriers does not redound to Expedia's benefit simply because Expedia might facilitate flight reservations on any one of those carriers. Rather, by offering those carriers, Expedia creates the opportunity to introduce the customers who are booking flights to, and to leverage, Expedia's entire network of offerings.

73.     If United were to depress Expedia's ability to offer the broadest array of airline carriers possible by terminating Expedia's ability to facilitate its customers booking Post-September 2019 Flights in breach of the Agreement, United would not only deprive Expedia of the ability to facilitate its customers' booking those United flights, but it would depress the value of Expedia's entire offering and would eliminate countless instances in which Expedia's customers would have, but for United's breach, added additional reservations or bookings to their first one. Moreover, the fact that Expedia's Agreement with United may, one day, end, does not entitle United to accelerate any effects of the Agreement's end, particularly in light of the fact that seven months remain in the Agreement's term.

## COUNT I
## (<u>Declaratory Judgment</u>)

74.     Expedia restates and realleges each allegation in the prior paragraphs as if fully set forth herein.

75.     Section 20.1 of the Agreement provides that, with respect to the functionalities and features necessary for Expedia's customers to book travel on United via Expedia (*e.g.*, pricing and availability for Publicly Available Fares), United is prohibited from discriminating against or disfavoring Expedia as compared to those functionalities and features (including Publicly Available Fares) that United uses in its own internal booking website or that United provides to any third-party travel provider.

76.     Section 7.1 of the Agreement prohibits United from manipulating its own rules or policies relating to booking tickets for United flights in a manner "that is intended to negatively impact Expedia" or "in any manner that impacts the relative economic benefits of Expedia and its Affiliates."

77.     In United's February 1 Letter, it has threatened to terminate Expedia's access to all Publicly Available Fares for United flights scheduled to occur after September 30, 2019. United concedes that the primary purposes of this threatened termination of access to fare and availability information are to (1) cause economic harm to Expedia including by "suppressing" Expedia's ability to facilitate bookings for United flights and by causing Expedia to "sell as few tickets as possible" on United flights; and (2) compel Expedia to renegotiate the terms of the Agreement.

78.     United's actions to date and the actions it threatens in its February 1 Letter violate, *inter alia*, Sections 7.1, 19.1, and 20.1 of the Agreement.

79.     Expedia has at all times complied with its obligations under the Agreement.

80.     In light of United's threatened failure to provide Expedia with fare and availability information in violation of the Agreement, as set forth in the February 1 Letter, a real and justiciable controversy exists between the parties concerning their respective rights and liabilities under the Agreement.

81.     United's actions to date, and the actions it threatens in its February 1 Letter, have caused or will cause more than $75,000 in harm to Expedia, and additional irreparable harm to Expedia (and its customers), as described above.

### COUNT II
### (Breach of Contract)

82.     Expedia restates and realleges each allegation in the prior paragraphs as if fully set forth herein.

83.     As noted above, Section 20.1 of the Agreement prohibits United from discriminating against Expedia with respect to "any functionality or feature, whether currently existing, new, upgraded, or updated, that makes the booking or ticketing process more efficient or technically feasible" and requires that United provide Expedia with the same functionality and features as it uses on its own website and that it provides to Expedia's competitors. Further, Section 7.1 prohibits United from using its policies and practices related to ticketing "in a manner that is intended to negatively impact Expedia . . . or in any manner that impacts the relative economic benefits of Expedia and its Affiliates."

84.     United's threats against Expedia, including, but not limited to, the February 1 Letter as well as the conduct threatened in the February 1 Letter are in breach of Sections 7.1 and 20.1 of the Agreement.

3415237.1

85.     Also noted above, Section 19.1 of the Agreement requires that United provide Expedia with pricing information and availability for all Publicly Available Flights regardless of the date of departure. The February 1 Letter is also in breach of Section 19.1 of the Agreement.

86.     Expedia has at all times complied with its obligations under the Agreement.

87.     United's breaches of the Agreement have injured Expedia in an amount not less than $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Expedia respectfully requests that an Order be entered:

(a)     declaring that, under the Agreement, Expedia has the right to access, and United has the obligation to provide Expedia with access to, all Publicly Available Fares, which includes, but is not limited to, pricing and availability for Publicly Available Fares for United flights scheduled to occur after September 30, 2019;

(b)     restraining and enjoining United from terminating or otherwise interfering with Expedia's contractual right to access all Publicly Available Fares for United flights, including, but not limited to, pricing and availability for Publicly Available Fares for flights scheduled to occur after September 30, 2019;

(c)     restraining and enjoining United from interfering with Expedia's right and ability to provide customer service to all Expedia customers who book United flights that are scheduled to occur after September 30, 2019, to the extent that customer service relates to the post-September 30, 2019 flight booked by the customer;

(d)     awarding damages to Expedia in an amount to be proven at trial; and

3415237.1

(e) granting such other and further relief as may be just and proper.

Dated: New York, New York
   February 26, 2018

      FRIEDMAN KAPLAN SEILER &
       ADELMAN LLP


        /s/ Christopher M. Colorado
      Eric Seiler
      Christopher M. Colorado
      Andrew M. Englander
      7 Times Square
      New York, New York  10036-6516
      (212) 833-1100

      *Attorneys for Plaintiff Expedia, Inc.*