# **ATTACHMENT TO LETTER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————x
                                              :
EXPEDIA, INC.,                                :
                                              :
                              Plaintiff,      :
                                              :   Case No. ——19-cv-01066 (PKC)
        - against -                           :
                                              :
UNITED AIRLINES, INC.,                        :   **AMENDED COMPLAINT**
                                              :
                              Defendant.      :
                                              :
——————————————————————————x

Plaintiff Expedia, Inc. ("Expedia"), by its undersigned counsel, for its Complaint against Defendant United Airlines, Inc. ("United"), upon knowledge as to its own conduct and upon information and belief as to all other matters, hereby alleges:

### NATURE OF THE ACTION

1.  Expedia and United are parties to a Ticketing Agreement (the "Agreement") that runs through September 30, 2019. That Agreement requires United to provide Expedia with, among many other things, access to pricing and availability for all of United's publicly available flights regardless of when those flights are to occur, and that United permit Expedia's customers to reserve seats on those flights.[1] As of this filing, United has provided pricing and availability for flights through January 6, 2020, and Expedia's customers, who frequently reserve flights far in advance of departure, have already reserved more than 2,000 seats on United flights that are not scheduled to occur until after September 30, 2019.

---

[1] As used herein, the terms "book and "reserve" are used interchangeably, and each refer to the customer's act of booking a flight or lodging from a third-party provider through Expedia. The date on which the customer books a flight from the airline carrier is (almost always) different from the date on which the flight actually departs or occurs.

32. When it was initially agreed to by United and Expedia, the Agreement had a three-year term, from September 1, 2011 through August 31, 2014.

33. During those three years, United never claimed that Expedia was entitled to access only Publicly Available Fares for flights scheduled to occur during the term of the Agreement (*i.e.*, flights occurring between September 1, 2011 through August 31, 2014), and United never attempted to prevent Expedia from accessing flights scheduled to occur after August 31, 2014, or to prohibit Expedia's customers from reserving such flights.

34. ~~Leading up to~~During the ~~end of the~~ first three-year term of the Agreement, United and Expedia expressed their mutual desire to continue their contractual relationship. ~~And when August 31, 2014 came and went, United continued to provide Expedia with access to all Publicly Available Fares, and Expedia continued to reserve flights on United and to provide customer service to its customers who reserved those flights.~~ On December 24, 2013~~—nearly four months after the Agreement was supposed to end—~~, Expedia and United agreed in writing to the "Amendment to Ticketing Agreement," (the "First Amendment"), which extended the Agreement's term through August 31, 2016 and reaffirmed United's material obligations under the Agreement, including United's obligation to provide Expedia with access to all Publicly Available Fares.

35. Just as it had done during the Agreement's original term, during the term as extended by the First Amendment—*i.e.*, between December 24, 2013 and August 31, 2016—United continued to provide Expedia with continuous access to Publicly Available Fares regardless of the flight's departure date. During the second three-year term of the Agreement, United never claimed that Expedia was entitled to access fares for only those flights scheduled to occur during the term of the Agreement (*i.e.*, flights occurring between December 24, 2013 and

13

August 31, 2016), never attempted to prevent Expedia from accessing Publicly Available Fares for flights scheduled to occur after the term of the Agreement, or to prohibit Expedia's customers from reserving such flights.

36.     Leading up to August 31, 2016—as they had done under the original agreement—United and Expedia again expressed their mutual desire to continue their contractual relationship beyond the current term of the Agreement. And, again, the Agreement's agreed-to end date passed, but even after August 31, 2016, United continued to provide Expedia with access to all Publicly Available Fares, and Expedia continued to facilitate its customers' bookings for United flights and to provide customer service to customers who booked those flights. On October 12, 2016— *more than five weeks after the extended end date for the Agreement had passed*—Expedia and United executed the "Second Amendment to Ticketing Agreement," (the "Second Amendment"), that further extended the Agreement term through September 30, 2019, and again reaffirmed all of United's material obligations under the Agreement, including the obligation to provide Expedia with access to all Publicly Available Fares.

37.     Under the Second Amendment, as under the original Agreement and again under the First Amendment, Expedia continues to have access to Publicly Available Fares for United flights scheduled to occur only after the current term of the Agreement is to end, *i.e.*, on September 31, 2019, and Expedia's customers can (and do) book those flights during the Agreement's current term. As of the date of this Complaint, United offers customers—including through Expedia—the ability to book flights for any time through January 6, 2020. And, Expedia's customers continue to book those flights even ~~through~~though the flights will occur

14

after the end of the Agreement's term—indeed, as of the filing of this Complaint, customers have already booked more than 2,000 Post-September 2019 Flights through Expedia.

38. Over the course of United and Expedia's more than seven-year relationship under the Agreement—during which time <ins>one of</ins> the agreed-to end <del>date twice</del><ins>dates</ins> approached and <del>twice</del> passed—United provided Expedia with tens of thousands of Publicly Available Fares for flights dated after the Agreement's then-current end date. And, Expedia's customers have booked, at minimum, thousands of such flights. This is hardly surprising because it is exactly what the Agreement requires.

39. Notably, Expedia is not aware of a single instance, over those more than seven years, when any Expedia customer who booked a United flight during the term of the Agreement failed to receive customer service from Expedia simply because the flight was to occur after the then-current end date of the Agreement.

**United Becomes Dissatisfied With the Agreement**

40. In early 2017, United began to express dissatisfaction with the economic terms of the Agreement, despite that it had only months earlier, in October 2016, reaffirmed and extended those terms by agreeing to the Second Amendment.

41. Specifically, United complained that the terms of the Agreement were less advantageous to United than terms of similar agreements that Expedia had with other carriers. When Expedia disagreed, United threatened that if Expedia did not commit to renegotiating the Agreement before 2019 (despite that, at the time, more than two years of the Agreement's three-year term remained) and agree to economic terms more like those Expedia had with other carriers, then United would cut off Expedia's access to Publicly Available Fares for United flights.

45. Expedia responded that the terms of the Agreement to which the parties contracted seven years ago—and which the parties have twice reaffirmed following additional negotiations in 2013 and 2016—plainly state that Expedia is entitled to all Publicly Available Fares for all United flights irrespective of when those flights are to occur. This response prompted a second "legal notice" from United to Expedia restating its threat that United "will not continue to permit ticketing of United flights by Expedia or its customers after Jan 1, 2019 *in the absence of an agreement that covers the period after Oct 1, 2019*."

46. Next, during a meeting on December 11, 2018, between United and Expedia to discuss United's threats and demands, United told Expedia that because it was unhappy with the terms of the Agreement, its intention was to cause Expedia to "*sell as few tickets as possible*" until the contract was renegotiated.

47. United also claimed that its rush to renegotiate the Agreement was not based solely on United's dissatisfaction with the economic terms, but was also purportedly due to United's concern that *if* United and Expedia did not reach an agreement to extend or amend the Agreement before September 30, 2019; and *if* that meant that, after September 30, 2019, Expedia no longer had access to United's Publicly Available Fares for Post-September 2019 Flights; *then* Expedia would simply abandon the needs of all customers who had booked Post-September 2019 Flights before the Agreement expired and that *if* Expedia refused those customers service or assistance, United would be harmed.

48. Expedia explained to United that this speculative theory of harm was incoherent. Indeed, Expedia's strong self-interest in ensuring that its own customers have a satisfying travel experience—irrespective of the airline on which they booked a flight—trumps

17

likelihood that the customer will leave Expedia for a competitor increases substantially. And, Expedia's experience has shown that when an Expedia customer is forced to choose a competitor over Expedia because Expedia is unable to offer customers the ability to book flight reservations on a particular major carrier, even after Expedia gains (or regains) the ability to offer customers the capability to book on that carrier, a "halo effect" remains in which the customer's perception of Expedia has fundamentally changed. And Expedia can be forced to spend as long as *two years*, and substantial customer reacquisition costs, to recapture that same customer from the competitor.

69. Thus, if United restricts Expedia's access to Post-September 2019 Flights, the harm United threatens to cause to Expedia will continue to exist even if United later agrees to give Expedia access to those fares.

70. In addition to impairing public perception of Expedia's brand and Expedia's goodwill, United's breach would have a ripple effect through all of Expedia's offerings that is vast, undeniable, and nearly impossible to quantify.

71. Expedia's ability to offer a full-service, one-stop travel shopping experience is a key driver to Expedia's success because a typical Expedia customer looks to Expedia to build each aspect of their travel, block by block, which, in turn, gives Expedia the opportunity to facilitate that customer's booking of multiple travel offerings (as opposed to the customer booking only a single aspect of their travel). Customers may enter Expedia's site at various landing pages or search functions, and with disparate intentions or goals, and those customers' initial interactions, searches, and purchases within the site give Expedia the opportunity to capture that customer's other travel needs, which has an exponential benefit to Expedia. For example, if a customer begins their experience on the Expedia site by searching for

and booking a flight, the customer's search and booking allows Expedia to present the customer with options and availabilities for hotels, vacation rentals, rental cars, trains, cruises, and insurance. In other words, the value of one travel booking is not limited to the value of that purchase in isolation; rather, it extends to all other potential additional bookings that might stem from the initial one.

72. Notably, the most common and valuable entry point into Expedia's ecosystem is a customer's search for a flight. Indeed, as many Expedia shopping experiences begin with a flight search as all other Expedia offerings combined. And, if an Expedia customer begins their Expedia experience by searching for and booking a flight, then that customer is more likely than any other customer with some other starting point on the site, to book additional items like lodging or car rentals, which creates exponential value for Expedia. Expedia's ability to offer a robust selection of airline carriers does not redound to Expedia's benefit simply because Expedia might facilitate ~~flights~~flight reservations on any one of those carriers. Rather, by offering those carriers, Expedia creates the opportunity to introduce the customers who are booking flights to, and to leverage, Expedia's entire network of offerings.

73. If United were to depress Expedia's ability to offer the broadest array of airline carriers possible by terminating Expedia's ability to facilitate its customers booking Post-September 2019 Flights in breach of the Agreement, United would not only deprive Expedia of the ability to facilitate its customers' booking those United flights, but it would depress the value of Expedia's entire offering and would eliminate countless instances in which Expedia's customers would have, but for United's breach, added additional reservations or bookings to their first one. Moreover, the fact that Expedia's Agreement with United may, one day, end, does

not entitle United to accelerate any effects of the Agreement's end, particularly in light of the fact ~~the~~that seven months remain in the Agreement's term.

## COUNT I
## (Declaratory Judgment)

74. Expedia restates and realleges each allegation in the prior paragraphs as if fully set forth herein.

75. Section 20.1 of the Agreement provides that, with respect to the functionalities and features necessary for Expedia's customers to book travel on United via Expedia (*e.g.*, pricing and availability for Publicly Available Fares), United is prohibited from discriminating against or disfavoring Expedia as compared to those functionalities and features (including Publicly Available Fares) that United uses in its own internal booking website or that United provides to any third-party travel provider.

76. Section 7.1 of the Agreement prohibits United from manipulating its own rules or policies relating to booking tickets for United flights in a manner "that is intended to negatively impact Expedia" or "in any manner that impacts the relative economic benefits of Expedia and its Affiliates."

77. In United's February 1 Letter, it has threatened to terminate Expedia's access to all Publicly Available Fares for United flights scheduled to occur after September 30, 2019. United concedes that the primary purposes of this threatened termination of access to fare and availability information are to (1) cause economic harm to Expedia including by "suppressing" Expedia's ability to facilitate bookings for United flights and by causing Expedia to "sell as few tickets as possible" on United flights; and (2) compel Expedia to renegotiate the terms of the Agreement.

that are scheduled to occur after September 30, 2019, to the extent that customer service relates to the post-September 30, 2019 flight booked by the customer;

    (d) awarding damages to Expedia in an amount to be proven at trial;

and

    (e) granting such other and further relief as may be just and proper.

Dated: New York, New York
   February 4<ins>26</ins>, 2018

         FRIEDMAN KAPLAN SEILER &
          ADELMAN LLP


         _____/s/ Christopher M. Colorado_____
         Eric Seiler
         Christopher M. Colorado
         Andrew M. Englander
         7 Times Square
         New York, New York  10036-6516
         (212) 833-1100

         *Attorneys for Plaintiff Expedia, Inc.*