UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EXPEDIA, INC.,

       Plaintiff,       19-cv-1066 (PKC)

   -against-          OPINION
                 AND ORDER

UNITED AIRLINES, INC.,

       Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

     Plaintiff Expedia, Inc. brings a diversity action against United Airlines, Inc.
("United") for breach of contract and seeks a declaratory judgment as to the parties' rights and
obligations under the contract (Amended Complaint; Doc 32.)   Expedia alleges that United
breached its obligations under the parties' Ticketing Agreement by refusing to provide Expedia
with pricing and availability for United flights scheduled to depart after September 30, 2019, the
date the Ticketing Agreement expires.   In Expedia's view, it has the right, up to September 30, to
offer its customers United flights even if the flights depart after that date.   Expedia now moves for
a preliminary injunction requiring United to provide Expedia with fare and schedule information
for all of United's publicly-available flights, including those scheduled after September 30, 2019
(Pl.'s Mem.; Doc 18.)   For the reasons explained below, Expedia's motion for a preliminary
injunction is denied.

BACKGROUND

     Expedia is a Washington state corporation that is a leading travel provider,
aggregating information about travel services in a single website for customers to plan and book

travel.  (Am. Compl. ¶¶8−9.)[1]  For example, when a customer goes to Expedia's website, she may book flights, make changes to existing flights, make a complaint about a flight or airline, and use loyalty reward program points.  (Id. ¶¶15−17.)  United is a Delaware corporation that controls more than 15% of the market share for domestic air travel.  (Id. ¶¶10−11.)

I.      The Ticketing Agreement

Expedia and United signed a Ticketing Agreement on September 1, 2011, under which United agreed to provide Expedia with access to fares for all of United's publicly-available flights and pay Expedia a commission for each United flight booked through Expedia's website. (Id. ¶24; see Declaration of Julie Kyse ("Kyse Decl."); Doc 19 Ex. 1 (Ticketing Agreement).)  The Agreement has been amended twice, with the current version in effect until September 30, 2019. (Am. Compl. ¶¶35−36.)  Section 19.1 of the Agreement, "Publicly Available Fares," states that "[United] shall provide Expedia with access to all Publicly Available Fares  . . . ." (Doc 19 Ex. 1 at 12.)  Publicly Available Fares are defined in Section 1.2.26 to mean "all Fares made available for purchase by the public at large . . . ." (Id. at 3.)  Fares are in turn defined in Section 1.2.13 to mean "prices charged by [United] for air travel and available for purchase from [United] in . . . a Carrier Internal Distribution Channel," the latter term of which is further defined in Section 1.2.7 to include, "to the extent available to potential customers to make Ticket purchases . . . any [United] Web Site." (Id. at 2.)  Publicly-available fares are typically offered for flights scheduled to occur far into the future; for example, as of February 26, 2019, United had published fares for flights departing through January 6, 2020. (Am. Compl. ¶37.)  The parties acknowledged in

---

[1] Plaintiff filed an Amended Complaint after filing its motion for a preliminary injunction.  (Doc 32.)  Plaintiff explains this Amended Complaint corrects a factual allegation and non-substantive typographical errors, and the parties agree that it does not affect the preliminary injunction motion. (Doc 33.)

Section 19.3 that the requirements of Section 19 "constitute material terms of th[e] Agreement which have significant economic or operational impact on Expedia." (Doc 19 Ex. 1 at 12.)

Section 7.1 of the Agreement contains a Fairness Policy that states that United "will not manipulate [its] . . . rules or policies relating to the booking or sale of Tickets (including without limitation any rules or policies relating to costs, charges or fees in connection with the booking or sale of Tickets) . . . in a manner that is intended to negatively impact Expedia . . . ." (Id. at 8.) Finally, under the heading Service Commitment, Section 20.1 states that United "warrants that it will not discriminate against or disfavor Expedia . . . as compared to any Third Party Travel Company, any [Global Distribution System], [or] any Carrier Internal Distribution Channel . . . in the provision of customer service including without limitation in booking [and] ticketing . . . ." (Id. at 13.)

II.   <u>United's Purported Breach of the Ticketing Agreement</u>

On October 18, 2018, United sent Expedia an email asking to renegotiate the Ticketing Agreement. United stated that it "intended to suppress any sales from Expedia after Dec 31, 2018 for travel after Oct 1, 2019 and beyond" unless Expedia agreed to new terms for the Agreement. (Am. Compl. ¶44.) Expedia did not agree to renegotiate. (Id. ¶45.) United sent a second email stating its intent to restrict the ticketing of United flights on Expedia after January 1, 2019 in the absence of an agreement that covered the period extending beyond the end of the Ticketing Agreement, i.e., September 30, 2019. (Id.) Expedia proposed an amendment to the Agreement, which was rejected. (Id. ¶¶50−51.) On February 1, 2019, United sent a third email to Expedia that stated United would terminate Expedia's access to flight information for flights after September 2019 beginning on February 11, 2019. (Id. ¶¶53−54; see Doc 19 Ex. 6 (Letter of

February 1, 2019).)  United has represented to Expedia that it will not restrict access to flight information until the Court decides the motion for a preliminary injunction.  (Joint Pre-Conference Statement at 2; Doc 15.)

PRELIMINARY INJUNCTION STANDARD

A court may issue a preliminary injunction "only if the [movant] has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor."  Salinger v. Colting, 607 F.3d 68, 79−80 (2d Cir. 2010) (second alteration in original) (internal quotations omitted).  Plaintiff must also demonstrate that it is likely to suffer "irreparable injury in the absence of an injunction," id. at 80; see Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008), and that the "public interest would not be disserved" by the issuance of a preliminary injunction, Salinger, 607 F.3d at 80 (quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  Irreparable injury is one for which a monetary award "cannot be adequate compensation."  Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotations omitted). A court may not "simply presume" irreparable injury, but must "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits."  Salinger, 607 F.3d at 80, 82.

DISCUSSION

Expedia moves to enjoin United from failing to provide up to September 30, 2019 fare information for United flights after September 30, 2019.  (Pl.'s Mem. at 25.)  United maintains that it is benefitting customers by limiting the fares available on Expedia to those occurring on or before September 30, 2019, because Expedia is contractually obligated to service customers who

book United flights through Expedia, and Expedia has admitted that it cannot service flights after its contract with United expires on September 30, 2019. (Def.'s Mem. Opp. at 2; Doc 34.)  The Court held a hearing on plaintiff's motion on March 29, 2019.  The parties were afforded the opportunity to call live witnesses, (Doc 48) but neither side did so.

I.      Expedia Has Demonstrated a Likelihood of Success on the Merits

The parties do not dispute that New York law applies to Expedia's breach of contract claim.  (Pl.'s Mem. at 13; Def.'s Opp. Mem. at 21.)  To establish a breach of contract claim under New York law, Expedia must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

The parties do not dispute the existence of an agreement or that damages will result from United failing to provide Expedia flight information past September 30, 2019.  (Pl.'s Mem. at 5, 13, 21; Def.'s Opp. Mem. at 12.)  As for adequate performance by Expedia under the Agreement, Expedia states that it has assisted customers in booking United flights under the Agreement since September 2011, and has agreed with United twice to extend the Agreement. (Kyse Decl. ¶¶19−21.)  It further states that, over the course of the seven years of the Agreement, it has given customer service to all customers who booked United flights scheduled after the then-current end date of the Agreement.  (Id. ¶27.)

United argues that Expedia has not and will not adequately perform under the contract.  This is so, it claims, because Section 20.2 states that "the intent of the Parties is . .  [to] deliver to customers, regardless of booking channel, a consistent product for [United] Flights,

- 5 -

including without limitation . . . services . . . ."  (Doc 19 Ex. 1 at 13.)[2]  According to United, Expedia has admitted that it "cannot meet its service obligations for flights that depart after the Agreement expires" because Expedia will be unable to provide services such as changing tickets to another United flight after September 30, 2019.  (Def.'s Opp. Mem. at 20.)

Expedia denies admitting that it will be unable to meet its service obligations.  It is a statement, according to Expedia, of what will happen when and if United restricts access to fares for flight departing after September 30, 2019.  (Pl.'s Mem. at 17.) ("But if United bars Expedia from seeing United's schedule of post-September 2019 flights, which seats are available on those flights, and the pricing of those seats, and revokes Expedia's authority to facilitate its customers' booking on United, then Expedia's ability to assist those customers will be severely hampered.") Expedia has not admitted it is unable to perform its obligations under the Agreement.

To the extent United argues that Expedia will be in breach of the agreement after September 30, 2019, because it will be unable to change customers' tickets on United flights, United and Expedia will no longer have contractual obligations towards one another at that time. United admits as much when it says that the Agreement's "specific language governing which obligations continue beyond its expiration date . . . do[] not include Expedia's service obligation . . . ." (Def.'s Mem. Opp. at 22 (citing Agreement § 33.8; Doc 19 Ex. 1 at 19) (emphasis added); Declaration of Amos Khim ("Khim Decl.") ¶15; Doc 37.)

---

[2] United also cites to Section 1.2.12 of the Agreement defining the term "Expedia Customer" to include persons "seeking to change an itinerary or otherwise obtain customer service."  Def.'s Opp. Mem. at 20.  To the extent such a provision imposes any duties on either party, it would not be violated by Expedia for the same reasons as those discussed with respect to Section 20.2.

United also contends that Expedia has not adequately performed under the contract in the past.  It asserts that Expedia has not transmitted customer contact information to United in an industry-standard manner as required by the Agreement.  (Agreement § 14; Doc 19 Ex. 1 at 10.)   United provides a statement of its Senior Manager of Remote Program and Business Operations, Dawn Bhatti, who states that of a random sample of 200 Passenger Name Records revealed 16% of entries that did not comply with the standard industry format.  (Declaration of Dawn Bhatti ¶13(b)(i); Doc 36.)   Expedia responds with a statement by its Vice President of Transport Partner Services stating that the parties conferred regarding this issue and that "United confirmed last August any issues regarding [Passenger Name Records] had been resolved." (Supplemental Declaration of Julie Kyse ("Suppl. Kyse Decl.") ¶12; Doc 40.)  The Court does not consider the deficiencies of this random sampling, even if true, to constitute a material failure to adequately perform under the Agreement.

Expedia has demonstrated a probability of success on the merits of its claim of breach of the Agreement by United.  The Agreement states that United "shall provide Expedia with access to all Publicly Available Fares at pricing and availability levels no less favorable than" the levels offered to third party travel services or, inter alia, United's internal website.  (Agreement § 19.1; see § 1.2.7; Doc 19 Ex. 1 at 2, 12.)  It further states that United promises not to "disfavor Expedia" in Expedia's access to "any functionality . . . that makes the booking or ticketing process more efficient or technically feasible."  (Agreement § 20.1.)  Publicly Available Fares are currently available beyond September 30, 2019; they have been offered to Expedia already (Kyse Decl. ¶44), and, Expedia states that at the date of filing the Motion for a Preliminary Injunction, fares and schedules were available on United's website through January 2020, (Suppl. Kyse Decl. ¶2 (stating as of March 4, 2019, United fares were available through January 29, 2020).)  It is well-known in

the industry that travelers book travel far in advance of their travel date.  (Kyse Decl. ¶16; <u>see</u> Tr. of 3/29/2019 Hearing at 40 ll.1−3 (United's counsel representing that it is standard in the industry for fares to be available for purchase 11 months in advance).)  There is no language on the face of the Agreement to suggest that during the last 11 months or so of a three-year contract, (Agreement § 15.1), United would stop offering Expedia any fare or availability information or customer service responsibilities.

United argues that it is no longer obligated to provide all publicly-available fares because it is "clear that [Expedia] will not live up to the contract" obligations that Expedia provide a "consistent" product, and that United is "legally required to take steps to mitigate the harm resulting from Expedia's inability to provide service after contract expiration."  (Def.'s Mem. Opp. at 21−22; Agreement § 20.2.)  But, as explained above, there is no evidence that Expedia cannot service customers through the end of the Agreement's expiration, i.e. September 30, 2019, after which it is no longer required by the Agreement to service customers.

The parties have had two extensions to the Agreement.  Expedia's Vice President of Transport Partner Services stated that United never before prevented Expedia from accessing fare and availability information for flights scheduled to occur after the term of the Agreement, and that during the first extension of the Agreement Expedia customers were booking United flights scheduled to depart after the Agreement's term ended without an extension of the Agreement in place.  (Kyse Decl. ¶¶20−21; <u>see</u> Khim Decl. ¶19 & Ex. A (showing parties signed an extension to the Agreement August 29, 2016, two days before the amendment to the Agreement expired).)  At the preliminary injunction stage, Expedia has demonstrated a likelihood of success on the merits of its breach of contract claim.

II.     Expedia Has Not Demonstrated Irreparable Injury

Expedia has not demonstrated that "it is likely to suffer irreparable injury in the absence of an injunction."  Salinger, 607 F.3d at 80.  "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation."  Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995) (internal quotation marks and citation omitted).  In other words, irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied."  Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999).  Generally, a showing of irreparable injury "is the single most important prerequisite for the issuance of a preliminary injunction."  Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted).

"Courts generally are reluctant to grant preliminary injunctions in breach of contract actions, unless there are damages that are difficult to measure and there is a risk of loss of goodwill, reputation, or business opportunities."  PCS Wireless LLC v. A to Z Wireless Sols. Inc., 841 F. Supp. 2d 649, 652 (E.D.N.Y. 2012) (citing CRP/Extell Parcel I, L.P. v. Cuomo, 394 F. App'x 779, 781 (2d Cir. 2010)); see Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004) (holding injunctive relief was appropriate where defendant's actions would cause harm "through loss of reputation, good will, and business opportunities").  Here, absent an injunction, United immediately will cease providing Expedia with publicly-available fares for flights scheduled after September 30, 2019.  As a consequence, Expedia will primarily suffer monetary loss in the form of commissions by persons who otherwise would have purchased United tickets through Expedia scheduled for after September 30, 2019.  Estimates of the amount of United

tickets that would be purchased between March and September for travel after September 30, 2019 are quantifiable.  (See, e.g., Declaration of David Bartels ("Bartels Decl.") ¶7 & Fig. 1; Doc 35 (estimating ticket sales based on 2018 data).)   Expedia may also lose revenue on services associated with lost United bookings such as car rentals, hotel bookings, travel insurance and "at destination experiences."  These losses are also quantifiable.

Expedia argues it will face irreparable harm based on loss of reputation because of the confusion and delay resulting from Expedia's inability to provide services for United's flights after September 30, 2019.  Expedia does not dispute, though, that the Agreement, if not renewed, will terminate on September 30, 2019, at which point in time Expedia will no longer be able to service customers who purchased or want to purchase United tickets scheduled after that date. Expedia has not demonstrated that maintaining the contractual status quo will quell any possible reputational harm, rather than simply delay the harm caused by the bargained-for expiration of the Agreement on September 30, 2019.  It is far more likely that the predominant cause of damage to Expedia's reputation will be the failure of United and Expedia to renew their Agreement such that United fares will no longer be offered through Expedia.  There is no evidence that postponing the rupture of this relationship will place Expedia "in a materially different position tha[n] it is in now."  Linden Care, LLC v. Express Scripts, Inc., 15 cv 1335 (BKS/CFH), 2015 WL 12734164, at *13 (N.D.N.Y. Dec. 7, 2015) (internal quotation marks omitted).

Expedia further argues reputational harm because the loss of United's 15% domestic airline market share will create "a significant hole" in "the full-service offering that is the core of Expedia's brand."  (Pl.'s Mem. at 19; see Kyse Decl. ¶9.)  Again, for the reasons discussed in the preceding paragraph, this harm is not a result of any alleged breach of the Agreement, but rather a result of the natural contractual expiration of the Agreement.  United also

offers examples of myriad periods of time in which flights were unavailable on Expedia and air carriers that do not sell flights on Expedia, casting doubt on the proposed reputational injury to Expedia's full-service reputation.  (Bartels Decl. ¶18; Doc 35.)  Expedia's own Senior Vice President stated that when Expedia lost fare and availability information for American Airlines, it (i) lost monetary damages, and (ii) had growth in bookings decline for a limited time before growth resumed.  (Declaration of John Morrey ("Morrey Decl.") ¶¶19−20; Doc 20.)  This does not suggest an injury that would not be remedied by a monetary award.

Granting an injunction would likely mean that hundreds or thousands of additional customers would book flights through Expedia for the post-September 30 period.  (Bartels Decl. ¶7 & Fig. 1 (estimating exponential increase in ticket sales as date approaches September 30, 2019).)  To the extent Expedia alleges that customer confusion and delay in customer service resulting in loss of goodwill are the irreparable reputational injuries it faces, such injuries are not cured by injunctive relief.  The parties contracted for a fixed term and did not include provisions discussing customer service of tickets purchased through Expedia after the expiration of the Agreement.  Such "self-inflicted" harms are not considered irreparable.  11A Wright et al., Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) (Westlaw 2018); see Salt Lake Tribune Publ'g Co. v. AT&T Corp., 320 F.3d 1081, 1106 (10th Cir. 2003).

The Second Circuit has held that even if a plaintiff shows "it would find it difficult to regain the business of customers" following the termination of a business relationship, this kind of injury would "be rather readily compensable in monetary damages."  Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72−73 (2d Cir. 1979); see World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 161 (2d Cir. 2012) ("When the alleged harm is the loss of customers and business as a result of a breached agreement . . . that harm is compensable with

money damages."); Biocon Ltd. v. Abraxis Biosci., Inc., 16 cv 6894 (RMB), 2016 WL 5817002, at *5 (S.D.N.Y. Sept. 26, 2016) (rejecting reputational loss as a reason to grant a preliminary injunction where party could calculate loss of revenue).

Expedia argues that United's actions will harm third parties, including customers who already purchased tickets through Expedia for flights scheduled to depart after September 30, 2019, customers who want to make purchases for post-September 30, 2019 United flights, third-party employers, banks, loyalty programs, and non-profits that contract with Expedia to provide travel benefits, and members of Expedia's loyalty program who will be restricted in what they may purchase with their points.  (Pl.'s Mem. at 18−19; see Kyse Decl. ¶¶46−47.)  These injuries to third parties do not demonstrate that Expedia itself will suffer irreparable harm.  See Fed. Ins. Co. v. Metro. Transp. Auth., 17 cv 3425 (JFK), 2017 WL 2929471, at *2, *3 (S.D.N.Y. July 10, 2017) ("[T]he theoretical possibility of harm to third parties is not relevant to, and does not establish, the required showing of irreparable harm to [plaintiff], the proponent of injunctive relief in this application.").  Expedia offers no reason why these potential third party injuries could not be mitigated by clear, concise, plain and prominently displayed disclosure of the impending expiration of Expedia and United's relationship.  Having found no irreparable harm to Expedia, any hypothetical harm to customers or third-party travel sites is both speculative and insufficient.

III.    Expedia Has Not Demonstrated that the Public Interest Weighs in Favor of a Preliminary Injunction

The public interest does not weigh in favor of a preliminary injunction here.  There is no serious issue presented as to the ability of members of the public to fly on the airline of their choosing.  As noted, meaningful and prominent disclosure will mitigate any harm to the public.  Indeed, additional confusion and harm may result from customers booking post-September 30

United flights through Expedia but being unable to have Expedia address customer service issues following the Agreement's expiration.

<u>CONCLUSION</u>

        For the foregoing reasons, plaintiff's motion for a preliminary injunction is DENIED.  The Clerk is directed to terminate the motion (Doc 17.)

        SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
      April 5, 2019